IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-cv-876-MOC

| ALI DARWICH, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| STEVEN KEMERLING, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss, or in the Alternative, to Transfer Venue [Doc. 21], filed by Steven Kemerling, Kristi Noem, and Pamela Bondi (the "Federal Respondents").

## I. PROCEDURAL HISTORY

The Petitioner, who is presently detained by U.S. Immigration and Customs Enforcement ("ICE") in Folkston, Georgia,[1] filed the instant action pursuant to 28 U.S.C. § 2241. [Docs. 1, 2]. The Petitioner names as Respondents: Steven P. Kemmerling, the Assistant Field Office ICE Director in Charlotte; Kristi Noem, the U.S. Secretary of Homeland Security ("DHS"); Pamela Bondi, the United States Attorney General; and Terry Johnson, the Sheriff of Alamance County. The Petitioner requests relief from his detention.[2] [Doc. 12]. The Court entered a Temporary Restraining Order enjoining the Petitioner's removal or the alteration of his legal status. [Doc. 10].

Presently before the Court is the Federal Respondents' Motion in which they ask the Court

---

[1] Folkston lies in Charlton County in the Southern District of Georgia.

[2] Petitioner separately filed a Motion for Release on Bail. [See Doc. 12, 33].

1

to dismiss the § 2241 Petition or, in the alternative, transfer it to the United States District Court for the Southern District of Georgia where the Petitioner is presently confined. [Doc. 21]. The Petitioner has responded [Doc. 27], and the Federal Respondents have replied [Doc. 37]. The Federal Respondents' Motion to Dismiss is ripe for determination.[3]

## II. BACKGROUND

Petitioner, a citizen of Lebanon, entered the United States at the John F. Kennedy airport in Queens, New York, in 1992. [See Doc. 1-3 at 3 (October 28, 2020 Decision and Order)]. Petitioner was served with a Form I-122 notifying him that he appeared to come within the exclusion provisions of § 212(a)(6)(C), (a)(7)(A)(i)(I), and (a)(7)(B) of the Immigration and Nationality Act ("INA"). [Id.]. Petitioner was mailed a notice informing him of his immigration hearing. [Id. at 4]. Petitioner failed to appear and, on April 15, 1993, the exclusion proceeding was administratively closed without prejudice "until such time as the Applicant is located and the matter recalendared for further proceedings." [Doc. 22-1 at 8 (April 15, 1993 Order)].

On November 21, 2019, DHS filed a motion to re-calendar the exclusion proceedings and to change venue from New York to the Charlotte Immigration Court. [Doc. 1-3 at 4]. The Motion was granted and the exclusion proceedings were transferred to Charlotte. [Id.].

On October 31, 2022, the Charlotte Immigration Judge entered an Order denying Petitioner's application for asylum, denying Petitioner's application for withholding removal, ordering his removal, and granting Petitioner's application for deferral of removal under the United Nations Convention Against Torture. [Doc. 2 (Sealed Order)]. The matter is presently pending before the Board of Immigration Appeals ("BIA"). [See Docs. 1-5, 1-6].

---

[3] The Court declines to address any other pending matters including the Federal Respondents' Response in opposition to the § 2241 Petition [Doc. 23], and Sheriff Johnson's Motion to Dismiss [Doc. 30].

On the morning of October 29, 2025, Petitioner was arrested at his home in Charlotte.[4] [Doc. 22-1 at ¶ 14 (Marcinkevich Decl.)[5]]. He was transported to a holding room at ICE Enforcement and Removal Operations ("ICE/ERO") Charlotte Field Office for further processing. [Doc. 22-1 at ¶ 14].

The Charlotte Field Office falls under the ICE/ERO Atlanta Field Office's area of responsibility. [Id. at ¶ 1]. The Charlotte Field Office has holding cells which are generally used to temporarily house aliens before they are transferred to another facility that is more suited to long-term detention. [Id. at ¶ 16]. There is no dedicated ICE facility for longer-term detention within the Western District of North Carolina. [Id.]. The Alamance County Detention Center ("ACDC")[6] serves as ICE/ERO's transition space in North Carolina such that it houses aliens while en route to a longer-term detention space. [Id. at ¶ 17]. Generally, aliens are transferred from the ACDC to either the Stewart Detention Center ("SDC") in Lumpkin, Georgia,[7] or the Irwin County Detention Center ("ICDC") in Ocilla, Georgia.[8] [Id.].

On October 29 at 11:16 a.m. Petitioner's attorney emailed Respondent Kemmerling to inquire about Petitioner's detention. [Doc. 37-2 at 2 (Oct. 29, 2025 email)]. Respondent Kemmerling responded at 2:34 p.m., stating in pertinent part:

> … **Mr. Darwich is en route to the Alamance County Detention Center** before making his way to either the Stewart Detention Center or the Folkston ICE Processing Center. I can let you know tomorrow which one he is destined for.

---

[4] Charlotte lies in Mecklenburg County, in the Western District of North Carolina.

[5] Crystal Marcinkevich is a Supervisory Detention and Deportation Officer at the ICE/ERO Field Office in Charlotte.

[6] Alamance County is in the Middle District of North Carolina.

[7] Lumpkin lies in Stewart County, in the Middle District of Georgia.

[8] Ocilla lies in Irwin County, in the Middle District of Georgia.

[Doc. 37-2 at 1 (Oct. 29, 2025 email)] (emphasis added).

Petitioner was transported to the ACDC at approximately 4:45 p.m. on October 29. [Doc. 37-1 at ¶ 4 (Young Decl.)[9]]. The DHS's website listed Petitioner's "current detention facility" as the ACDC by 6:47 p.m. that day; the website noted that "additional information" was available at the Charlotte ERO sub-office's phone number. [Doc. 28-1]. Petitioner was booked at ACDC at 8:13 p.m. [Doc. 37-1 at ¶ 4].

The following morning, October 30, 2025, searches of the DHS website for Petitioner reflected "Search Results: 0" at 8:11 a.m. and 9:33 a.m. [Docs. 28-2, 28-3]. Petitioner filed the instant § 2241 Petition through counsel in this Court at 10:49 a.m. See Fed. R. Ev. 201 (addressing judicial notice). Searches of the DHS website at 11:01 a.m. and 1:48 p.m. continued to yield zero results. [Docs. 28-4, 28-5].

Meanwhile, at approximately 11:23 a.m. on October 30, Petitioner walked out of ACDC to a waiting Customs and Border Patrol transport en route to the ICDC. [Doc. 37-1 at ¶ 5].

At approximately 1:20 p.m. the transport from ACDC to ICDC stopped at the Charlotte ICE/ERO due to Department of Transportation regulations regarding the limits on driver hours. [Doc. 22-1 at ¶ 19]. Petitioner departed the Charlotte ICE/ERO at 5:00 p.m. [Id. at ¶ 20].

At 7:55 p.m. on October 30, a search of the DHS website for Petitioner instructed "Call ICE For Details" at the ERO Charlotte sub-office. [Doc. 28-6]. Petitioner was booked into the ICDC at 10:30 p.m. [Doc. 37-1 at ¶ 20]. The DHS website continued to state "Call ICE For Details" at the Charlotte sub-office through at least November 6, 2025. [Docs. 28-7, 28-8, 28-9, 28-10, 8-11, 28-12].

---

[9] Steven R. Young is a Major of Detention at the Alamance County Sheriff's Office with responsibility over the ACDC and transportation.

On November 3, 2025, the ICE Field Office Director issued a letter terminating Petitioner's parole pursuant to 8 C.F.R. § 212.5(e)(2)(i). [Doc. 23-1 at 3 (Nov. 3, 2025 letter, Certificate of Service dated Nov. 19, 2025)].

On November 10, 2025, the Petitioner was transferred to the Folkston, Georgia, ICE Processing Center.[10] [Doc. 24-1 at ¶ 6].

On November 14, 2025, the DHS website reflected Petitioner's status as "In ICE Custody," but it erroneously identified his "current detention facility" as Folkston D Ray ICE Processing Center in Folkston. [Doc. 28-13; see Doc. 24-1 at ¶ 6].

The Court provides the following time line of events for ease of discussion:

| | | |
|---|---|---|
| 10/29/25 | 8:30 a.m. | Petitioner is arrested, detained in Charlotte in W.D.N.C. |
| | 2:43 p.m. | Kemerling states that Petitioner is en route to ACDC in M.D.N.C. |
| | 4:45 p.m. | Petitioner departs the Charlotte Holding Room. |
| | 6:47 p.m. | DHS locator shows Petitioner's current detention at ACDC. |
| | 8:13 p.m. | Petitioner is booked at ACDC in M.D.N.C. |
| 10/30/25 | 8:11 a.m. | DHS locator: zero results. |
| | 9:33 a.m. | DHS locator: zero results. |
| | 10:49 a.m. | § 2241 Petition is filed in W.D.N.C. |
| | 11:01 a.m. | DHS locator: zero results. |
| | 11:23 a.m. | Petitioner departs ACDC. |
| | 1:20 p.m. | Petitioner stops at ICE/ERO Charlotte in W.D.N.C. |
| | 1:48 p.m. | DHS locator: zero results. |

---

[10] The Federal Respondents initially identified Petitioner's location as the Folkston D Ray ICE Processing Center. [Doc. 22; Doc. 22-1 at ¶ 21]. They filed a Notice and Declaration correcting the Petitioner's location to the Folkston ICE Processing Center. [Docs. 24, 24-1]. The Folkston ICE Processing Center and the Folkston D Ray ICE Processing Center are located next to one another in the same complex in Folkston, Georgia. [Doc. 24-1 at ¶ 6].

5

| | 5:00 p.m. | Petitioner departs ICE/ERO Charlotte in W.D.N.C. |
| | 10:30 p.m. | Petitioner is booked at ICDC in M.D. Ga. |
| 11/10/25 | | Petitioner is transferred to Folkston, Georgia in S.D. Ga. |

### III.  DISCUSSION

Title 28, Section 2241 provides district courts with authority to grant relief "within their respective jurisdictions.'" Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004) (quoting 28 U.S.C. § 2241(a)). As a general matter, "a habeas petition seeking to challenge present physical custody should be filed 'in the district of confinement' and 'the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Id. at 426 (quoting 28 U.S.C. § 2242); see Kanai v. McHugh, 639 F.3d 251, 255 (4th Cir. 2011) ("When a petitioner is physically detained … the 'district of confinement' necessarily is the location of both the habeas petitioner and the immediate custodian"). The custodian is "the person with the ability to produce the prisoner's body before the habeas court. Padilla, 542 U.S. at 434. Because "[b]y definition, the immediate custodian and the prisoner reside in the same district," the Court generally requires petitioners to name "some person who has the *immediate custody* of the party detained" rather than "the Attorney General or some other remove supervisory official." Suri v. Trump, 2025 WL 1806692 (4th Cir. July 1, 2025). A subsequent transfer "does not strip the court of jurisdiction over the petition." Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434 (3d Cir. 2021); see, e.g., Adepoju v. Scales, 782 F.Supp.3d 306 (E.D. Va. May 14, 2025).

These "default" district of confinement and immediate custodian rules are not absolute. Suri, 2025 WL 1806692, at *4. The Supreme Court has recognized that, when an individual is "held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate

6

custodian and district of confinement rules." Padilla, 542 U.S. at 450 n.18. This "unknown-custodian exception" provides that, "if the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry, the attorney may file a habeas petition in the detainee's last-known location against their ultimate custodian." Suri, 2025 WL 1806692, at *4; see, e.g., United States v. Moussaoui, 382 F.3d 453, 465 (4th Cir. 2004) (where the immediate custodian is unknown, it is proper to serve the petitioner's ultimate custodian).

In the instant case, Petitioner was being restrained in the Middle District of North Carolina at the time when the Petition was filed and, by definition, his immediate custodian was also located there. Accordingly, pursuant to ordinary habeas rules, the Petition should have been filed in the Middle District of North Carolina pursuant to district of confinement and immediate custodian rules. See 28 U.S.C. §§ 2241, 2242, 2243; Padilla, 542 U.S. 426.

The result is the same under the unknown custodian exception. Petitioner was arrested and detained in the Western District of North Carolina, and Petitioner's counsel was notified that same day that Petitioner was en route to the ACDC in the Middle District of North Carolina. Within hours of counsel receiving that information, the DHS inmate locator changed Petitioner's "current detention facility" to ACDC, and Petitioner was booked there. The following morning, no information about the Petitioner's facility was available on the DHS's website. Assuming *arguendo* that Petitioner's location was not discoverable through counsel's reasonable inquiry, the Petition should have been filed at Petitioner's last-known location in the Middle District of North Carolina, naming his ultimate custodian as the Respondent.[11]

---

[11] Because the Court concludes that this action should have been filed in the Middle District of North Carolina in any event, it need not determine whether ordinary habeas rules and the unknown custodian exception applies, nor is it necessary to determine the appropriate respondent in this action. Those matters are more appropriately resolved by the Middle District.

Petitioner's contention that any jurisdictional or venue problem was "perfected" by the brief stop in Charlotte while en route to Georgia, is rejected. [Doc. 27 at 2]. It was Petitioner's location at the time of filing or, alternatively, his last-known location, that determined the district filing regardless of any further transfers. See, e.g., Adepoju, 782 F.Supp.3d at 306 (the location at the time of filing is controlling).

Title 28 U.S.C. § 1631 provides a court with authority to transfer a case for lack of jurisdiction. Specifically, Section 1631 provides that "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court ... in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; see also 28 U.S.C. § 1404(a), 1406(a). At the time that the instant Petition was filed, it could have been properly filed only in the Middle District of North Carolina.

The Federal Respondents' contention that the action should be transferred to Petitioner's present district of confinement, the Southern District of Georgia, is rejected because "transfers are only permissible to 'a district where [a case] would have been brought.'" Suri, 2025 WL 18096692, at *4 n.4; [see Doc. 22 at 2]. "[T]here is absolutely no reason to think and the government points to no case indicating, that a habeas petition challenging present confinement could be filed in a district to which a petitioner had not yet been." Suri, 2025 WL 18096692, at *4 n.4. Pursuant to Sections 1631 and 1406, and in the interest of justice, the matter will be transferred to the United States District Court for the Middle District of North Carolina.

The instant Motion to Dismiss, or in the Alternative, to Transfer Venue will therefore be granted only insofar as this matter will be transferred to the United States District Court for the Middle District of North Carolina for all further proceedings. It is denied in all other respects.

IV. CONCLUSION

For the foregoing reasons, this action is transferred to the Middle District of North Carolina.

**ORDER**

**IT IS, THEREFORE ORDERED** that:

1. The Federal Respondents' Motion to Dismiss, or in the Alternative, to Transfer Venue [Doc. 21] is **GRANTED IN PART AND DENIED IN PART** as stated in this Order.

2. This action is **TRANSFERRED** to the United States District Court for the Middle District of North Carolina.

3. The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: December 17, 2025

Max O. Cogburn Jr.
United States District Judge