IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALI DARWICH (a# 072-454-777), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-CV-1162 |
| | ) | |
| STEPHEN P. KEMERLING, in his | ) | |
| official capacity as Assistant Field | ) | |
| Office Director, Immigration and | ) | |
| Customs Enforcement, Enforcement and | ) | |
| Removal Operations, Charlotte, NC | ) | |
| Sub-Office; TERRY JOHNSON, in his | ) | |
| official capacity as Sheriff of Alamance | ) | |
| County, NC; KRISTI NOEM, in her | ) | |
| official capacity as United States | ) | |
| Secretary of Homeland Security; and | ) | |
| PAMELA BONDI, in her official | ) | |
| capacity as United States Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Chief District Judge.

Petitioner, Ali Darwich is a native and citizen of Lebanon.  He came to the United States without valid entry papers in 1992 but was allowed to enter the United States on parole, pending exclusion proceedings.  Immigration and Customs Enforcement ("ICE") agents took him into custody in late 2025, and Mr. Darwich seeks relief from federal immigration detention pursuant to 28 U.S.C. § 2241.  Because his detention by agents of the Department of Homeland Security ("DHS") was unlawful, the Court will grant Mr.

Darwich's habeas petition, order his release from custody, and enjoin the federal respondents from terminating his parole without following the applicable law.

## I.  Procedural History

After he was arrested by ICE agents in Charlotte, North Carolina, on October 29, 2025, Mr. Darwich filed his petition in the Western District of North Carolina on October 30, 2025.  Doc. 1 at ¶¶ 18–19.  The Court ordered the respondents to respond to the habeas petition and issued a temporary restraining order and preliminary injunction enjoining the respondents and their agents, employees, and representatives from removing Mr. Darwich from the continental United States or altering his legal status.  Doc. 10 at 4.  The TRO has been extended multiple times.  The current TRO has been extended through and including January 23, 2026.  Doc. 54.

Upon motion of the federal respondents, the Court transferred the case to the Middle District of North Carolina because Mr. Darwich was held in Alamance County in the Middle District at the time he filed the petition.  Doc. 48 at 8–9.  The habeas petition has been fully briefed, and the Court held a hearing on January 9, 2026.  Minute Entry 01/09/2026.  Other motions remain pending and will be discussed as they arise.

## II.  Factual Background

The material facts are undisputed.[1]  Mr. Darwich, a native and citizen of Lebanon, entered the United States at the John F. Kennedy airport in New York on June 6, 1992.  Doc. 1-3 at 3.  He arrived at this port of entry without a proper visa or other valid entry

---

[1] At the January 9, 2026, hearing, both parties said there was no need for an evidentiary hearing and that the matter was ready for resolution on the merits based on the record.

2

document, and that day, the Immigration and Naturalization Service ("INS")[2] served him with a Form I-122 notifying him that he appeared to come within the exclusion provisions of § 212(a)(6)(C), (a)(7)(A)(i)(I), and (a)(7)(B) of the Immigration and Nationality Act ("INA"). *Id*.; Doc. 22-1 at 5. INS released him on parole pending exclusion proceedings. Doc. 22-1 at pp. 1–2 ¶ 5. He later applied for asylum and withholding of removal. Doc. 2 at 4.

The immigration court scheduled a hearing on Mr. Darwich's case and mailed him notice. Doc. 1-3 at 3–4. He did not appear for the hearing, and, on April 15, 1993, the immigration court administratively closed his exclusion proceedings without prejudice "until such time as the Applicant is located and the matter recalendared for further proceedings." Doc. 22-1 at 8.

The United States government learned that Mr. Darwich lived and worked in North Carolina no later than July 31, 2000, during the course of an unrelated investigation and court proceeding. *Id*. at p. 2 ¶ 9. Since that time, the government has been in contact with Mr. Darwich and has known he lives in the Charlotte area. *Id*.; Doc. 2 at 8–9. Although it learned of his location no later than the year 2000, the government did not re-start immigration proceedings against him for many years. Doc. 22-1 at p. 2 ¶¶ 9–10; Doc. 1-3 at 4.

On November 21, 2019, DHS moved to re-calendar Mr. Darwich's exclusion proceedings and to change immigration court venue from New York to Charlotte. Doc.

---

[2] As of March 1, 2003, the functions of INS were transferred to DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

1-3 at 4.  The immigration court granted both motions and transferred Mr. Darwich's

exclusion proceedings to Charlotte.  *Id*. at 7.

After a hearing, the immigration court entered an order in September 2022

denying Mr. Darwich's application for asylum, denying his application for withholding of

removal, and ordering his removal, but the court also granted his application for deferral

of removal under the United Nations Convention Against Torture.  Doc. 2 at 30–31.  It

deferred his removal based on a finding that he would likely face torture if deported.  *Id*.

Both he and the government appealed to the Board of Immigration Appeals, and that

appeal remains pending.  *See* Docs. 1-5, 1-6.

On the morning of October 29, 2025, unidentified officers with ICE Enforcement

and Removal Operations arrested Mr. Darwich at his home in Charlotte.  Doc. 22-1 at p.

3 ¶ 14.  There is no evidence that these agents possessed or were aware of any warrant or

order for arrest.  There is no evidence that anyone in the government had terminated or

purported to terminate Mr. Darwich's parole.  At the time of his arrest, neither the

Secretary of Homeland Security nor the Attorney General nor anyone acting with their

delegated authority had terminated Mr. Darwich's parole and Mr. Darwich was entitled to

be out of custody while he awaited a final decision on his immigration matter.

Mr. Darwich was transported to the Alamance County Detention Center that same

day.  *Id*. at p. 3 ¶ 15.  The next day, October 30, 2025, he was transferred to a Georgia

detention center.  *Id*. at p. 4 ¶¶ 19–20.  He is presently held at the Folkston ICE

Processing Center in Folkston, Georgia.  Doc. 24-1 at ¶ 6.

4

On November 3, 2025, the ICE Field Office Director issued a letter purporting to terminate Mr. Darwich's parole pursuant to 8 C.F.R. § 212.5(e)(2)(i), Doc. 23-1 at 3, which is the current regulation on termination of parole. The letter lists the service date as November 19, 2025. *Id.* The letter states that "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time." *Id.*

Other facts will be discussed as they become relevant.

## III.    Section 2241

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[H]abeas corpus is a broad, independent writ designed to address challenges to any illegal custody," *Wall v. Kiser*, 21 F.4th 266, 273 (4th Cir. 2021), including those "by executive direction." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Non-citizens may use the writ in immigration-related matters where no other statutory mechanism for review is provided. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). No party has pointed to any other statutory mechanism for review of Mr. Darwich's detention or parole revocation. *See infra* at 9.

In a § 2241 habeas petition, the petitioner "bears the burden of proving that he is being held contrary to law" and "must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011). A court

5

considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

## IV.        Statutory and Regulatory Provisions

The INA "establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance."  *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025).  It has long been established that government agencies must comply with the statutory requirements governing the exercise of this power and with any applicable regulatory provisions implementing those requirements.  *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

At the time Mr. Darwich entered the United States, the relevant statute provided that a noncitizen who arrived at a port of entry without a visa or other entry document was "excludable" from the country.  8 U.S.C. § 1182(a)(7) (1992).  Statutes required INS to detain such noncitizens seeking admission and placed in exclusion proceedings, and those noncitizens could only be released if granted parole by the Attorney General "for emergent reasons or for reasons deemed strictly in the public interest."  *See* 8 U.S.C. §§ 1182(d)(5), 1225(a)-(b), 1226 (1992).  The parole statute also provided that "when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled."  *Id.* § 1182(d)(5)(A) (1992).[3]

---

[3] In 1992, the statutory subsection governing parole stated in relevant part as follows:

6

As is common with many statutes, regulations imposed further requirements and details.  In 1992, the regulation governing notice of parole termination stated:

> [U]pon accomplishment of the purpose for which parole was authorized or when in the opinion of the district director in charge of the area in which the alien is located neither emergency nor public interest warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status which he or she had at the time of parole. . . . If the exclusion order cannot be executed by deportation within a reasonable time, the alien shall again be released on parole unless in the opinion of the district director the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(d)(2)(i) (1992).

The relevant statutes were amended in 1996.  Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 309(c), 110 Stat. 3009, 625 (1996).  Those amendments were extensive,[4] but the current parole statute is quite similar.  It is not, however, identical.  The current statute authorizes the Secretary of Homeland Security in his discretion to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian

---

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (1992).

[4] The amendments substantially changed the way non-citizens attempting to enter the United States are treated.  *See, e.g., Y-Z-L-H*, 792 F.Supp.3d at 1132–33 (setting forth many current provisions of the law).

7

reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole can be terminated for the same reason provided in the earlier statute: "when the purposes of such parole shall, in the opinion of the [appropriate government officer], have been served." *Id*.[5] The amendments also provided that "in the case of an alien who is in exclusion or deportation proceedings as of the . . . effective date –(A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments." IIRIRA, Pub. L. No. 104-208, § 309(c), 110 Stat. 3009, 625 (1996).

The implementing regulation for the amended statute authorizes termination of parole "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed . . . , neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). It also requires "written notice to the alien" of the termination. *Id*.[6]

_____

[5] The subsection provides in relevant part:

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

[6] The current regulation governing notice of parole termination states in relevant part:

The 1992 parole statute applies to Mr. Darwich according to the 1996 IIRIRA amendments because he was already in exclusion proceedings. Pub. L. No. 104-208, § 309(c), 110 Stat. 3009, 625 (1996). He does not contend any exception to that rule applies.[7]

## V.     Review of Parole Decisions

As noted *supra*, federal courts have the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), and non-citizens may use the writ in immigration-related matters where no other statutory mechanism for review is provided. *See Zadvydas*, 533 U.S. at 687–88. The parties agree that there is no applicable statutory mechanism for reviewing parole termination.[8] Thus, remedies under the habeas statute are available, if a

---

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed . . . , neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States or at the expiration of time for which the parole was authorized. 8 C.F.R. § 212.5(e)(1). The parties have not suggested that either circumstance applies here.

[7] DHS's notice of termination of Mr. Darwich's parole cited the current regulation and used the language in the current statute. Doc. 23-1 at 3; 8 U.S.C. § 1182(d)(5)(A). At the January 9, 2026, hearing, the government referred to the notice as a "form termination" and considered the citation to be a clerical error. During Mr. Darwich's immigration proceedings, the immigration judge applied the pre-1996 law with one exception for reasons explained, but Mr. Darwich otherwise did not receive the benefit of the newer IIRIRA provisions.

[8] The current statutes explicitly preclude review of such discretionary decisions. 8 U.S.C. § 1252(a)(2)(B)(ii). The government does not contend this provision applies to Mr. Darwich.

person is in custody, and courts can review whether DHS complied with the requirements of the governing parole statute and regulation. *See id.*; *Gabriel v. Bondi*, No. 25-CV-4298, 2025 WL 3443584, at *5 (D. Minn. Dec. 1, 2025) (finding judicial review appropriate where the habeas petition challenges whether DHS followed the law in terminating the petitioner's parole); *Araujo v. LaRose*, No. 25-CV-2942, 2025 WL 3278016, at *1 (S.D. Cal. Nov. 24, 2025) (same and collecting cases).

## VI.     Discussion

### A.  Mr. Darwich Was Taken into Custody in Violation of the Laws of the United States

As the recitation of the law and undisputed facts *supra* makes clear, at the time of his arrest on October 29, 2025, Mr. Darwich "was in custody in violation of the laws of the United States." 28 U.S.C. § 2241(c)(3). Both the 1992 statute and the 1996 amendments in effect today require that parole be terminated only by the identified agency officials. 8 U.S.C. § 1182(d)(5)(A); *id.* § 1182(d)(5)(A) (1992). No authorized agency official terminated Mr. Darwich's parole before he was arrested. Nor did the officers who detained Mr. Darwich have an arrest warrant or other legal authority to take Mr. Darwich into custody. Arresting someone on parole who remains in exclusion proceedings without terminating his parole is illegal and in violation of the laws of the United States.

Those persons arresting Mr. Darwich also violated applicable regulations, which require written notice to the person whose parole has been terminated. 8 C.F.R. § 212.5(d)(2)(i) (1992). None of the officers who took Mr. Darwich into custody

10

provided him such written notice, and the government otherwise had not provided such notice before his arrest. Indeed, the government did not provide any such purported notice to Mr. Darwich until well after he was arrested and filed his habeas petition. *See* Doc. 23-1 at 3 (showing notice was served on November 19, 2025).

In other words, the government did not provide written notice at the relevant time, as required by both the regulations in effect in 1992 when Mr. Darwich was paroled and by the regulations in effect today. 8 C.F.R. § 212.5(e)(2)(i); *id.* § 212.5(d)(2)(i) (1992). Because those persons taking him into custody and those persons holding him in custody did so without complying with the required regulations, Mr. Darwich was "in custody in violation of the laws of the United States." 28 U.S.C. § 2241(c)(3); *see City of New York v. FCC*, 486 U.S. 57, 63 (1988) (noting in the context of preemption and the supremacy clause that "The phrase 'Laws of the United States' encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization.").

The government raises multiple arguments in opposition. It contends that DHS has discretion over revoking parole, that it was permitted to terminate Mr. Darwich's parole and detain him, and that termination was implicit in DHS's decision to arrest him. Doc. 23 at 11–12.

The government is correct that DHS has discretion in parole termination; the 1992 statute itself refers to a decision made "in the opinion of the Attorney General." But that does not give the government discretion to violate the requirements set forth in that same law and its implementing regulations. There is no evidence that anyone with statutory or

11

delegated authority had in fact terminated Mr. Darwich's parole when agents took him into custody. The applicable law requires a decision by an authorized government official[9] that the purposes of Mr. Darwich's parole had been met and that termination was appropriate; the explicit requirement for written notification means there is no such thing as "implicit" revocation. 8 U.S.C. § 1182(d)(5)(A) (1992); 8 C.F.R. § 212.5(d)(2)(i) (1992). The government must follow the applicable statutes and regulations when exercising its discretion, *see Accardi*, 347 U.S. at 268; *Zadvydas*, 533 U.S. at 687–88, and here it is clear—indeed, it is undisputed—that it did not do so before Mr. Darwich's arrest.

The government points to Mr. Darwich's later notice of parole termination, Doc. 23 at 19–20, but it cites no case or statute for the proposition that written notice somehow retroactively converts an unlawful arrest and detention into something lawful. Other courts have recently found the exact opposite in the immigration detention context. *See e.g.*, *Saengphet v. Noem*, No. 25-CV-2909, 2025 WL 3240808, at *8 (S.D. Cal. Nov. 20, 2025) ("After-the-fact determinations in an attempt to justify a noncitizen's re-detention cannot cure the Government's blatant procedural errors."). And, as discussed *infra*, the later written notice did not meet the applicable requirements to terminate parole.

The government asserts that Mr. Darwich's parole was automatically terminated when he did not appear for immigration proceedings in 1993. Doc. 23 at 19–20. Again,

---

[9] The government has not contended that the individual agents who took Mr. Darwich into custody were authorized by statute or regulation to terminate Mr. Darwich's parole. The record is silent as to the identity and titles of those agents and the reasons why they arrested Mr. Darwich.

it provides no citation to any statute, regulation, or other legal authority for this proposition. *See id*. Nor does it provide any evidentiary support, *id*., and the evidence in the record is inconsistent with the government's position. DHS continued to treat Mr. Darwich as though he was on parole and in exclusion proceedings. Doc. 22-1 at pp. 2–3 ¶¶ 11–12 (discussing the re-calendaring of his exclusion proceedings and his immigration court proceedings). There is no document reflecting written notice to him of such termination as required by regulation. He remained out of immigration custody, and DHS issued a November 3, 2025, letter terminating his parole, Doc. 23-1 at 3, which shows even the government understood him to be on parole up to that time.

### B. Mr. Darwich Remains in Custody in Violation of the Laws of the United States

Mr. Darwich remains in custody in violation of the laws of the United States. While there is evidence that a government official terminated his parole after his arrest,[10] this purported termination did not comply with the statutory requirements. As district courts all over the country have held, the parole termination statute and regulation require DHS to make "an individualized review" that the purposes of a particular noncitizen's parole have been met or that the statutorily-provided reasons for parole no longer exist. *See Villegas-Gonzalez v. Lynch*, No. 25-CV-1795, 2025 WL 3767939, at *5 (W.D. Mich. Dec. 31, 2025) (collecting cases). Here, nothing in the termination letter reflects such individual decision. Doc. 23-1 at 3. And there is otherwise no evidence that any

---

[10] The Court assumes without deciding that the person who signed the letter had the statutory and regulatory authority to revoke parole.

13

authorized official has ever made the required individual determination that "the purposes" of Mr. Darwich's parole "have been served." *See* 8 U.S.C. § 1182(d)(5)(A); *id.* § 1182(d)(5)(A) (1992). As the government recognized at the hearing, the November 3, 2025, letter was a "form termination" that quoted current law and its termination paragraph did not address anything specific to Mr. Darwich. Doc. 23-1 at 3.

The government contends that the cases requiring individualized notice do not apply because they were all decided under the current version of the revocation statute, not the 1992 version. Neither the parties nor the Court have found a similar case where a person was paroled before 1997, was detained decades later, and then brought a habeas petition about termination of parole. Both parties agree that this would be highly unlikely given the unusual facts of this case.

But cases applying the current statute are persuasive because the 1992 statute, like the current statute, also requires an individualized determination. The 1992 statute explicitly says that an alien's parole can only be terminated if the purposes of the alien's parole have been accomplished. *See* 8 U.S.C. § 1182(d)(5)(A) (1992) ("[W]hen the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled."). That inherently requires an individual decision.[11] Here, the form termination letter and other circumstances give every indication that the after-the-fact termination was made without consideration of his

---

[11] This was not a situation where an alien was paroled for a "group" reason, such as genocide of an entire ethnic group in his home country. Here, there is no such indication, and the government has not pointed to any such "group" decision granting parole or finding that such parole is no longer needed.

individual situation.  The government has presented no evidence beyond the conclusory termination letter explaining why the purposes of Mr. Darwich's parole had been served. In the absence of such an individualized determination, his ongoing detention remains illegal.  *See Gabriel*, 2025 WL 3443584, at *5.[12]

### C. Conclusion

Mr. Darwich's initial arrest and detention while on parole violated the laws of the United States.  He was arrested and detained without termination of his parole and without written notice of such termination, both "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The later notice of parole termination did not cure this violation or constitute a valid termination because it reflects no individualized determination of why the purposes of Mr. Darwich's parole were no longer met.  Mr. Darwich remains in custody unlawfully.

## VII.      Remedy

Upon finding a person is in custody in violation of the laws of the United States, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice so require."  28 U.S.C. §§ 2241(a), 2243.  The "typical remedy" for "unlawful executive detention" is release from custody.  *See Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser*, 411 U.S. at 484.

---

[12] The government also asserted at the hearing that the November 3, 2025, letter was adequate to terminate Mr. Darwich's parole because the 1992 statute and regulation do not explicitly state what the written termination notice must say.  For reasons just discussed, this argument is without merit.  Moreover, that termination letter cites current law, not the 1992 law, which the government acknowledges does not apply.  It is arbitrary to disavow the letter for one purpose and rely on it for another.

Section 2241 also provides for equitable remedies beyond release from custody. *See Danforth v. Minnesota*, 552 U.S. 264, 278 (2008); *see also Fay v. Noia*, 372 U.S. 391, 438 (1963) ("Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles."). As Justice Scalia noted, the federal habeas statute was long ago amended from a previous version that only authorized release from custody to the current version authorizing courts to "dispose of the matter as law and justice require." *Wilkinson v. Dotson*, 544 U.S. 74, 85 (2005) (Scalia, J., concurring); *see also Preiser*, 411 U.S. at 487 (noting that "[s]ince 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require.'").

Mr. Darwich requests *inter alia* that the Court order his release from custody. Doc. 1 at 9. As discussed *supra*, the government took Mr. Darwich into custody unlawfully and continues to detain him unlawfully. Release from custody is the usual remedy, it is appropriate here, and this relief will be granted.

Mr. Darwich also asks that the Court enjoin the government from terminating his parole and taking him back into custody unless an individual determination is made with proper notice. *Id.* "[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, and has the authority to see that its judgment is fully effectuated." *Davis v. Garland*, 708 F. Supp. 3d 283, 291 (W.D.N.Y. 2023) (cleaned up); *see also Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010). In another context, the Supreme Court has noted that habeas relief is available "to attack future confinement and obtain future releases." *Preiser*, 411 U.S. at 487 (holding that habeas is available to shorten a sentence if good time credits have not been appropriately applied).

16

Here, the government has detained Mr. Darwich for several months and has made no effort to explain why his individual parole was terminated. He has been on parole in this country for decades with the government's knowledge, the record does not show that anything has happened in the last several years to explain a parole termination, and an immigration court has found that he will be tortured if he is returned to his home country. Before his parole can be terminated under § 1182(d)(5)(A) (1992), he is entitled by statute to an individualized determination that meets the appropriate statutory and regulatory requirements.

The Court will enjoin the government from terminating Mr. Darwich's parole without following the applicable law to provide both notice of written termination and an individualized determination that the purposes of his parole have been met. To insure this decision is made on an individualized basis by a person with statutory authority and not, as happened before, by unknown and unauthorized ICE agents or based on a form order, no such decision can be made or notice provided to Mr. Darwich until he returns home to North Carolina or for at least 24 hours after his release, whichever occurs first. This additional relief is necessary to ensure that the release of Mr. Darwich pursuant to this Opinion and Order is not rendered meaningless.

The Court is mindful that some kinds of relief are "far outside the 'core' of habeas" such that it "may not be pursued through habeas." *Dep't Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020). In *Thuraissigiam*, an immigration case, the Supreme Court denied a request to vacate a removal order and to require a new opportunity to seek asylum, finding that to be "outside the scope of the writ as it was

17

understood when the Constitution was adopted." *Id.* Here, the Court's order does not go nearly so far. It does not say that Mr. Darwich is entitled to remain lawfully in the United States, as the habeas petitioners essentially sought in *Thurassiagiam*, *id.*, and in *Munaf*, 553 U.S. at 692. Instead, it requires that before the government may terminate the parole decision it made in 1992 and take Mr. Darwich back into custody upon a purported termination of parole, the government must comply with the law in the applicable statute and regulations and as stated in this order. This lies within the core of habeas relief, because it seeks to ensure compliance with the Court's order granting release. *See, e.g.*, *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019).

Mr. Darwich also asks that the Court enjoin the government from terminating his parole and taking him back into custody unless he is given an opportunity to respond to the written notice and a hearing. Doc. 1 at 9. There is no requirement for an opportunity to be heard in the statute, but given the length of time Mr. Darwich has been on parole, his positive contributions as reflected in evidence under seal, and the findings of the immigration court, Mr. Darwich might be entitled to protection under the Due Process Clause.

Determining exactly what those protections are in this specific immigration context, if any, would require the Court to delve into and decide questions not otherwise necessary for resolution of the petition.[13] The Court declines to reach an unnecessary

---

[13] In general, courts use a two-step inquiry to evaluate due process claims: courts must first determine if a liberty interest is affected. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). If so, courts must then determine what process is due. *Id.* "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.*

constitutional issue in the abstract and declines to express any views on whether Mr. Darwich is entitled to a hearing or an opportunity to be heard before his parole is revoked. The defendants have the duty to honor Mr. Darwich's constitutional rights, whether this Court explains them in advance or not. It is possible the government will not proceed to revoke Mr. Darwich's parole again or, if they do, that they will do so in a way that does not give rise to a constitutional challenge. If necessary, the constitutional question can be evaluated in light of the facts and circumstances of any such revocation and detention.

At oral argument, the government contended it should be able to detain Mr. Darwich in custody while it took steps to lawfully detain him. The government has provided no reason why his ongoing illegal detention is appropriate or why termination of his parole would be appropriate. Nor are there equitable reasons in favor of this request. It is not in the public interest for taxpayers to fund Mr. Darwich's housing, food, and ongoing expensive medical care while the government figures out if it can and should terminate Mr. Darwich's parole and, if it so decides, while it takes the necessary steps to do so lawfully. It is more equitable for Mr. Darwich to look after himself, as he has for several decades with the government's full knowledge and without incident. Mr. Darwich has shown no indication that he will flee or remove himself from the jurisdiction of the immigration court, and there is no basis for his ongoing illegal detention.

## VIII.     Conclusion

For the reasons discussed herein, the Court will grant Mr. Darwich's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Federal respondents must release

Mr. Darwich from custody subject to any conditions that existed under his original parole and shall not detain him again unless they follow the statutory and regulatory requirements for parole termination. Federal respondents must file a status report within three days of the issuance of this order certifying compliance with this order, and upon compliance final judgment will issue. Mr. Darwich's motion for release on bail and the respondent Terry Johnson's motion to dismiss will be denied as moot.

In his petition, Mr. Darwich asks for statutory attorney's fees under the Equal Access to Justice Act. Doc. 1 at 9. The Court expresses no views on whether such fees are recoverable. It will set an appropriate schedule for any such motion and associated briefing.

It is **ORDERED** that:

1. The petitioner's habeas petition, Doc. 1, is **GRANTED in part** to the extent stated herein and is otherwise **DENIED**.

2. The writ of habeas corpus is **ISSUED** and Federal Respondents **SHALL** immediately release Mr. Darwich from custody subject to any conditions that existed under his original parole.

3. Federal Respondents and agents under their control are **ENJOINED** from arresting or detaining petitioner Ali Darwich in connection with his immigration status or exclusion proceedings without following the applicable statutory and regulatory requirements and as explained in this Order and in any event are **ENJOINED** from arresting or detaining Ali

Darwich before Mr. Darwich's return to North Carolina or for 24 hours after his release, whichever is earlier.

4. Petitioner's other requests for relief are **DENIED**.

5. Federal Respondents **SHALL** file a status report within three days of the issuance of this order certifying compliance with this order.

6. Upon compliance, final judgment will issue.

7. The petitioner's motion for release on bail, Doc. 12, is **DENIED**.

8. The respondent Terry Johnson's motion to dismiss, Doc. 30, is **DENIED**.

9. Mr. Darwich may file a motion requesting an award of attorney's fees along with supporting evidence on or before March 6, 2026, after the consultation required in LR 54.2.  If such a motion is filed, any response in opposition shall be filed no later than March 27, 2026, and any reply brief is due no later than April 3, 2026.

This the 22nd day of January, 2026.


_____
UNITED STATES DISTRICT JUDGE